v. Viking Insurance. Mississippi again, but a whole different case. Mr. Hazard? Yes, ma'am. May it please the court. Yes. Your Honor, I'm here with co-counsel Ronald Stutzman, representing Demarcus Bradley and Angela Hawkins, the appellants and cross-athletes. This is a very simple case. The Mississippi Uninsured Motorist Act, or the UM Act as I'll refer to it, requires that every insurance policy, auto insurance policy, sold in Mississippi must contain uninsured motorist coverage for the driver, for resident relatives, and for any permissive user. The only way this coverage is not provided is if there's a written rejection form executed by the insurer. Judge Southwick in Netto v. Atlantic Specialty Insurance recognized that it's the insurance company's burden to prove that this rejection form was executed, and it was executed knowingly in an informed decision by the insurer. At no point in our argument here today can they produce this rejection form. With that said, coverage was enforced when Demarcus Bradley had his wreck. Now, before I continue my argument, I was going to see if the panel had any questions for me. This is, I assume, a problem of some recurrence, right? Yes, sir. A lot of households forget to add somebody or intentionally exclude or what have you. Yes, sir. There was an application process. Initially, when my client, Ms. Hawkins, first got her insurance, she signed a rejection form, and a copy of the rejection form is ROA-1444. She added a third car and purchased uninsured motorist coverage for all three cars, and there was no rejection form executed. Is this the type of issue we should certify to the Mississippi Supreme Court since it's their law, not ours? No, sir, because the majority of the cases recognized by Judge Jordan in the Godwin v. United States case, and the majority of the state cases recognize that if there's any ambiguity, that the ambiguity between policy and statute, the statute prevails. Then, all cases said they have to have this written waiver. There's no written waiver here. So this case has been tried on multiple levels at the Mississippi Supreme Court, and several of the lower courts, like Godwin, has indicated an eerie guess. What about this misrepresentation theory? The misrepresentation . . . Is there two different doctrinal ways to get to an insurance win? It seems to me that it's not clear what Mississippi law is, at least not totally clear. This is an eerie guess either way. Yes, sir. Why not just have a precedent that will bind both the state and federal courts, whereas all we can do is set a precedent that binds the federal courts? Yes, sir. The problem with the material misrepresentation theory on the common law, that is only for when a company voids a contract. Viking never voided this contract. Without them voiding the contract, this policy language is the one that governs this issue. So they can't invoke that defense of common law because they never voided it. They didn't seek to void it. If anything, they did the opposite, right? They just went ahead and added the sun to the policy. Correct, sir. Yes, sir. That's what they did. By not doing that, they're stuck with their definition of misrepresentation. Their definition of misrepresentation says any information known by you to be false, misleading, or fraudulent, that known by you kicks in three mechanisms. The first mechanism on a Rule 56 analysis, any disputed material fact must be construed in my favor at this stage. On a contractual analysis, they're the drafter of the contract. Any ambiguities must be construed in our favor. But under a Mississippi uninsured motorist coverage analysis, any ambiguity between the policy and the statute is construed for coverage. So the fact that they add that language in there proves that my client was covered at the time of the accident. You said the majority of Mississippi authority. Yes, sir. Which I assume means not the unanimity. There's been two cases I have known of that have restricted the U.M. statute, not specifically to the material misrepresentation. That's never been applied to the U.M. statute. The two cases of restricting coverage of the U.M. statute is when the Mississippi Supreme Court said that the issue of a Tort Claims Act when a fire truck was immune, they said the U.M. would not cover that. The legislature amended the statute right after that. And then this court said that the U.M. statute does not apply in foreign jurisdictions. I do believe Honduras. And those are the two restrictions of the U.M. statute to my knowledge. So it hasn't been 100% of the courts recognizing coverage, but there's been a few exceptions. Like I said, Chief Jordan went through an extensive analysis in the Godwin case. Yeah, but that other case didn't have the question about material misrepresentation. Do I understand correctly that you're saying that because . . . because Viking didn't rescind the policy but just altered it, that the misrepresentation at the outset then became not material? No, ma'am. What I'm saying is they can only use that to void the statute. Carroll, that is cited by them and cited by the court, the only way an insurance company can use a material misrepresentation common law right is when they are trying to void the statute. But not the U.M. coverage, is that what you're saying? I mean, I don't know . . . Yes, ma'am. Yes, ma'am. I would say that all situations where there's not a knowing waiver executed, they cannot back the word common law. But I'm . . . sorry, I'm a little dense. I don't understand why you're saying that they can only use a material misrepresentation to void the policy. That is what the Mississippi Supreme Court has said, ma'am. Right. But they didn't void the policy here, they extended it. Right. So, the original misrepresentation was not material because . . . unless you take misrepresentation at the time. But what I'm wondering is, is this argument that you're making to us today about that, was that presented to Judge Lee? Your Honor, yes, ma'am. We presented to Judge Lee. I argued that there could not be a material misrepresentation. One, because, once again, it violated the statute. But two, and by violating the statute, that includes not having a waiver. But two, they never voided the policy. Now, back to the material misrepresentation . . . But you didn't write about that, did he? No, ma'am. And that was one of my . . . that's my second point of appeal, accusing him of error. But you did argue it to him. Yes, ma'am. As a permissive user, even if he's not listed as a household resident . . . Right. Since there's an unlimited amount of people listed as a permissive user, that it could be a material to a higher premium is at least a question of fact at this stage, and I'm relying on the Carroll case where a gentleman got the life insurance policy. He did not disclose he had a history of skin cancer, died, Judge Lee granted summary judgment on the same reason he granted here, because the insurance company would have charged a higher premium. This court ruled that Judge Lee violated the rule of 56 analysis and sat in the position of a fact finder. If skin cancer could be a question of whether it's material or not, whether a disclosure of my client being a resident of a household had a material effect on anything with the policies, it's at least a question of fact because he's a permissive user. Let me ask you about the misrepresentation in a slightly different way. The way Judge Lee . . . it seems to me my understanding of misrepresentation law and the common law is recognized in Mississippi. Knowledge of your client would be irrelevant. If there's a misrepresentation, it's for it. You're saying that because, and you may disagree with my understanding of the law, but there are some cases that say that. You're saying since it wasn't void, they are left to misrepresentation as set out in the policy. And in the policy, there's a provision that Tom Lee quoted that says it's providing information to us that is known by you to be false. Known by you, you already quoted that section a little while ago. And it talks about it must affect either the eligibility of the coverage, the premium, whatever. So it did affect the premium. It seems to me that if they are limited to misrepresentation as set out in the policy, Judge Lee did not then go into explaining why he didn't think that language created a fact question. He didn't say why knowledge . . . I think he was assuming that in this situation, the nature of the failure to list somebody in the household who is of the right age goes without saying was knowing. I don't know if that's what he meant, why he wrote it that way, but he did have the actual policy language. Give me your take on why this isn't clearly ignoring misrepresentation. And if it is, is game over or do you have another argument? First of all, Your Honor, our first position is unless they have the waiver, the common law does not trump the statute. Back to your question specifically about misrepresentation. Taking that language and the affidavit of my client, that she did not knowingly provide any false information, that creates a dispute of fact . . . Well, that's a statement. That's conclusory. It was set on the policy she's supposed to list everybody, and she didn't list this driver. So did she say anything beyond just saying I didn't do it knowingly? I'm going to point her out and think I looked at the affidavit, but I don't know what it said. A mere conclusory allegation, I didn't do that knowingly. I didn't name my husband. It's not her husband, but she's supposed to name her husband. I didn't do that knowingly. It seems to me at some stage it's too conclusory to interfere with summary judgment. Well, Your Honor, if you look at the whole affidavit, she said she did not know she was being requested that information. The point is that she was just confused by the process. She obviously knew she had a son, but she was confused by the process of what they were asking at the time. At the initial time when she was asking, she executed a U.M. waiver, but she was no more confused by U.M. coverage or the questions they were asking than Viking was asking because Viking originally denied Mr. Bradley's claim because he wasn't listed on the policy, and that's in violation of the law. So there was confusion there on my client, and with the affidavit, if we're going under the misrepresentation prong, it creates a dispute of fact using Carroll as our subject matter. If the admission of skin cancer where the person in Carroll had multiple skin surgeries or operations on skin cancer, if that's found with no testimony in affidavit because the gentleman was deceased and this court has found that was a dispute of material fact, using their own policy against them, then an affidavit from my client that technically does not contradict the recorded statement at least reaches the standard of a dispute. If it's remanded and there's a determination to whatever the proper process may be, jury trial, defense trial, otherwise, determination made that this was knowing, is it then a valid refusal of coverage? Your Honor, like I said, our first position, and we actually want our partial summary judgment that he's insured. By that partial summary judgment being— I'm only talking about if we leave in place what Judge Lee said about— The misrepresentation, yes, sir. My first position always that's a dispute that what they're arguing— But if it is a misrepresentation under the policy found by fact, you agree that no coverage is owed. No, sir. Under Atlanta Payne, Payne said, a valid business reason like a higher premium charge can never restrict the uninsured motorist statute. The Mississippi Supreme Court has spoke on that. And this court, like I said, is recognizing here that there's a dispute of fact on life insurance, but the situation is there's no mandatory statutory requirement under life insurance. It is under policy. So, one, I reject the whole— Can you back it up one step further? If they had actually voided the policies, I don't know how much you're challenging misrepresentation or misrepresentation specifically under the policy language. If they had actually voided the policy under Mississippi common law, what's your position on the validity of that? They couldn't void the policy because they didn't get the waiver. Because, once again, it's a policy versus statute issue. One. Number two, like Judge Jones noted, I would challenge that whether it was a misrepresentation or not, it wasn't material. Under the material misrepresentation of the common law, they have to meet both prongs. My client was a permissive user whether he would disclose it or not. It was not going to change the charge of the premium for the policy. And then, three, my attack on the misrepresentation test is the intent of my client that has the affidavit and their policy language. All right, counsel. Any other questions? Thank you. All right. You have time for rebuttal in a few minutes. Mr. Whitfield. Your Honors, good morning. Bill Whitfield here on behalf of Viking. Let me just say this, I guess, at the outset relative to the relevant issues, I guess, that I believe this case is about. I don't think this case is at all about interpretation of U.M. statute or the contours of the U.M. statute. Normally, when I argue issues of law as it pertains to U.M. statutes, I'm dealing with issues of offset or other insurance or conflicting policies, conflicting languages, and things like that. I believe, and Viking believes, that this case is about material misrepresentation. Now, the overarching issue . . . Okay, but let's at least start with the statute because that's what I'm interested in. Sir? Let's at least start with the statute. If nothing else, that's what I'm interested in. Do you agree that, just as a pure statutory matter, I'm looking at A3-11-103B, the definition of insured. Do you agree that Bradley does fit within the terms of this statute? Oh, certainly. That's what the statute says. So we've got a conflict then between that statutory definition, matter of Mississippi, legislative policy, and common law misrepresentation doctrines. Is that the idea? We're basically resolving that conflict? So A3-11-103 is only part of the U.M. statute. A3-11-101 is another part of the U.M. statute, which gives the insurance company the right, judge, to have a policy approved by the insurance commissioner, which is what we did. Now, common law is not ignored when you're talking about A3-11-101 or even 103. There's plenty of cases, and we can go back to Judge . . . the state's approval of the policy allows you to have the policy and the misrepresentation doctrine trump the 103B definition. Is that sort of the idea? Judge, it's not so much a trumping of 103. I don't know that the two statutes themselves are necessarily in conflict with each other because, you know, obviously in kind of the normal parlance of writing policies, your family members are going to come under your particular insurance policy, but they're going to . . . if they're drivers, they're going to come with an additional premium. I guess the way I'm thinking about it is let's . . . most consumers don't know what the statutes say, but let's . . . I understand. . . . hypothesize, since we all are expected to know the law, whether we actually do or not. Let's hypothesize that the opposing party knew about this statute, said, look, I'm covered, my kid's covered, I don't need to do anything, I'm not engaged in fraud because the statute covers it. Is that a crazy notion? Judge, if I understand your question correctly, if somebody walks into the insurance agency and they sit down with the insurance agent and they ask for an insurance policy and the insurance agent and them are having this exchange, at the end of this particular exchange, this insurer, Ms. Hawkins, and this is part of our record at 60907.1262, 60907.1262 is the application that Ms. Hawkins signed. Okay? Now, this is a non-conflicting point relative to 8311.101 and 8311.103. Your point is she should have said her son's been added to the policy. I'm sorry. I apologize. Is your point basically she really should have told the insurance company about her son? Well, absolutely. During the course of their discussions with the insurance company, she really should have known. Absolutely. Fair enough. My point, though, is there is a statute that suggests that she doesn't have to tell anybody because it's automatic by virtue of statute. Okay. So if she doesn't have to tell anybody then, Judge, then she violated then the terms of the application and, therefore, the terms of the policy because the terms of this application clearly say, I understand that I must report to the company all persons of legal driving age or older who live with me temporarily or permanently, including all children at college. I understand that I must report all persons who are regular operators of any vehicle to be insured regardless of where they reside. Then Ms. Hawkins signs this particular form. I'm assuming. Go ahead. She acknowledges the terms. Now, if there is the thought by any court that basically an insured can walk into an insurance agency's office and do what Ms. Hawkins did and secure a product based upon her insurance or her insurability and she can walk out and count on the fact that, in this particular case, not only her husband, her daughter, and her son who lives in her household has coverage, whether it be UM or whatever, the liability aspect in terms of material misrepresentation has already been settled and resolved by the Supreme Court. And it's in the two cases of Safeway. One came out early in 2015. It's called Safeway v. Dukes. Another one came out in late 2015 called Jones-Smith v. Safeway. In both of those cases, the Mississippi Supreme Court said, ask to an undisclosed driver, and both of them dealt with an insured walking into an insurance agency's office, presumably, securing an insurance policy, not telling the insurance company about another driver in their household. In both of those instances, both of them, the Mississippi Supreme Court said, because of your material misrepresentation, you do not get insurance. Now, I will partially agree with Mr. Hazard about the existence of any specific case that may very well deal with that on the same parlance, Judge, in a UM context. But my response to that is this. If the court will read what Judge Dickinson wrote in the Lyons v. I think it's a direct general case in 2014, which I personally disagreed with when I read it, okay, what he said in that particular case was, is that since the Mississippi statute says that you shall afford insurance to anybody that basically gets a car on the road under the Mississippi Minimum Responsibility Act, that any type of, in that particular case, it was a named driver exclusion, there was a son of an insured that was driving the car in the Lyons case. Well, Judge Dickinson said in that case that since it's mandatory that you have insurance on your car, mandatory, then you can't exclude a driver if he is driving your car, even though it's a named driver exclusion. Now, what happened was is that the Mississippi legislature came back the following year and they passed a statute that basically said, if the insurance commissioner approves of exclusions in your policy, then you can incorporate those kinds of exclusions. Changing the law, the tacit acknowledgement of the ability of the insurance commissioner to approve those policies and then be vindicated, or at least approved under Mississippi law, is then seen in Judge Dickinson's decision in the Jones-Smith v. Safeway case because in footnote 8, he says the case of Lyons is acknowledged and because of a glitch in Mississippi law, the legislature has come along now and fixed it. It sounds like you do a lot of insurance law for your clients. I do some. I do some. Here's what I'm asking is, I'm assuming that this problem in this case does occur with some frequency where the policyholder doesn't remember or intentionally fails to mention a family member. Is this the sort of issue we should certify to the Mississippi Supreme Court? Judge, here's my position about certifying this particular case to the Mississippi Supreme Court. The plaintiffs have taken the position that Godwin is controlling on the issues in this case. I don't think that's true. Now, the reason I don't think that's true is because in Godwin, there was not a claim of material misrepresentation. I think this is a—I think both of you have acknowledged this is an eerie guess. Both of you are good lawyers who have presented competing theories. I guess what I'm wondering is we could set a federal precedent in this case that only applies to federal cases, or the state Supreme Court can set a precedent that applies to both. Wouldn't it be more—would it make sense to go ahead and get the rule from Mississippi since it's their law? You know, Judge, if you agree with me, no. Okay? I guess I can say it like that. Oh, but it's not up to us to agree, though, right? This is a question of state law. Mississippi Supreme—if we were to reach one result, just coin flip, we rule for one of you guys. Right, right. And the Mississippi Supreme Court tomorrow does the opposite. Our decision is wiped out. Would you agree with that? Judge, okay, I do agree that there is room for debate there, but here's my position. The Carroll and the Wesley and the Pierce cases, all decided by Judge Tom Lee, who is our judge in this particular case. The Carroll case came out in 1995. Judge Lee, in that particular case, he basically said that because the insurer in that case did not disclose a health condition, then I'm setting aside this policy for basically an MMR. Then counsel brought up the Carroll case, and what happened on the Carroll case, and it came up before this court for hearing, and Judge, I think it's Weiner who wrote the opinion, and he said that because the 30B—and this was weird to me, Judge, and I can tell you, I've been there before, and I know what the lawyer for the defendant was probably thinking. When his 30B6 witness basically said that the knowledge of the condition that the insurance company was bringing up to set aside the policy, I would not have used that to increase any type of premium or underwriting. That would not have been an underwriting issue with me. Now, notwithstanding that, Judge Lee did give summary judgment, and it came up here, and Judge Weiner wrote the opinion for the panel that basically said, no, there is an issue of fact. I don't know that I disagree with that judge, but in the Carroll and the Wesley case, not only did Judge Lee, but also this court did recognize the ability of an insurance company, even in spite of the Mississippi Responsibility Act, the UM statute has been around for a long time, but this court recognized the ability of an insurance company to deny a claim, well, not to deny a claim, but void a policy based upon MMR. Later, in 2014, Judge Lee also decided the other case, the Pierce case, and he said in that particular case that since an insurer had used tobacco, and since the tobacco use was not on the application, he set aside that particular health policy. Not only did he set it aside, but he voided it. Now, then you kind of track forward, Judge, under Mississippi law, and you get through Lyons, and you get through Safeway v. Dukes, and you get through Joan Smith v. Dukes, and you get all the way up to 2019 when this court in the Imperium case v. Shelton, again, recognized that an MMR, a material misrepresentation, would void a policy. In that particular case, it was a legal malpractice type claim. My position is this, is that this particular insurer materially misrepresented the members of her household, which absolutely, 100 percent, that's been testified to, it's in this record, 100 percent would have increased the premium. There are many cases that we've discussed in our brief that talk about that being material. That was a material misrepresentation. Our UM endorsement, which is what ultimately was applied all along, has been approved per statute under 8311-101, approved by the insurance commissioner. May I ask a question? Yes, ma'am. All right. I'm wondering whether these material misrepresentation cases often arise in the context where the insurance company isn't seeking to rescind the policy as opposed to what you did here. Normally, when I've seen cases like that, the plaintiff is making a claim for damages under policy and the insurance company says, no, material misrepresentation policy must be rescinded, but Viking didn't do that here. So you're saying somehow the material misrepresentation is not rescinding the policy, but it somehow affects whether the policy existed? What are you saying? Judge, okay. I'll acknowledge to Your Honor that my review going back many, many decades of material misrepresentation cases, MMR cases, I have not been able to find where a court did anything other than void the agreement. Then void it. Now, recognizing that particular line of authority going all the way back to another century, okay, our position is this, is that given the fact that our policy was approved by the insurance commissioner, that's a fact that the policy provides for our remedies in the event of a misrepresentation. And we can do, we can void the policy, and Judge, in most instances like this, Viking will void this policy, in most instances. However, in most instances, you don't have an insured that had been insured under this agreement, and I'm talking about the insured being Ms. Hawkins, and insured under this, she's the one that would have benefited from coverage had she been in the car rather than her son. Now, with that being said, this policy had been in place going back to March of 16. This accident happened in April of 18. Unbeknownst to Viking, her son and her, we believe, her husband and even her daughter, had been using the vehicles, which unbeknownst to Viking, they apparently were insuring. Then why didn't Viking, and you're saying the policy gives you as one remedy to add the other people in charge more. Is that what you're saying? Yes, ma'am. However, the remedy that we invoked in this particular instance, given the fact that this particular insured had historically been insured with Viking for two years, what Viking did under their policy, it's page 13 of 13, Judge, and it's page 1332 of the record. Under the designation of misrepresentation, this is under the general conditions, the policy says if you misrepresent any fact or condition that affects whether a risk is eligible or contributes to a loss, we reserve the right to rescind the policy and or deny coverage. Now, we denied coverage rather than rescind this policy. And frankly, as far as Bradley is concerned, DeMarcus Bradley, it doesn't matter to him whether Viking voided the policy or denied the claim. As to him. Mr. Whitfield, let me ask you what your response is. I think it does potentially matter to U.M. coverage. The way that Judge Jordan, the way Judge Lee interpreted the efforts to affect U.M. coverage in this case, I think are consistent with Payne and otherwise. That once you have whatever the minimum U.M. coverage is and you haven't disclaimed all coverage, you're going to get that and various kinds of exclusions are not going to affect that. My concern is even if you are right about common law misrepresentation that would cause the contract to disappear, it would not have U.M. coverage, it wouldn't be a contract. But since you leave this contract in place, you are subject to the very restrictive U.M. case law. You're not applying a driver exclusion. You're not applying some of the other exclusions that might more clearly be affected by that case law. But you are using a policy provision, and it's the policy provision you just read. So it seems to me that your argument is more difficult on material misrepresentation because you're not using common law. You're using the contract language. I'm not so much concerned about what Mr. Hazardous said. That's a fact question. If it needs to be resolved, it can be resolved. But I'm not sure that you have totally divorced yourself from the U.N. case law because you are leaving the contract in place and not voiding it. You got any answer to that? I do. Thank you, Judge. Good question. Let me just point this out again. Under 83— You're just talking about the contract's been approved? 83-101 requires the approval of the agreement by the insurance commission. Yeah, but I'm not sure the insurance commission can override the Supreme Court's interpretation of the minimum requirements of U.N. coverage. I think it is if the legislature said that's what you can do, and Judge Dickinson recognized that the legislature had that right in denying relief in the Joan Smith v. Safeway case. Either one of those are U.N. cases that you acknowledge, and that concerns me also about how relevant they are on their applicability here. Just because U.N.—I must say when I was on state court appeal, U.N. case law was astounding to me on just how aggressively it protects insurers. And I'm wondering just how much you've left yourself in the middle of all that. And maybe statute subpart 101 is the answer, but you got another answer if we don't like that one? Well, my answer is pretty simple. When the insurance commissioner said that we could use this endorsement, and this particular U.N. endorsement clearly says that we can't exclude coverage while your insured car is being operated by a regular operator who was not reported to us. The insurance commissioner approved that. And the statute—if you look at the Minimum Responsibility Act, when the legislature in January of 15 came along in response to Lyons, they said, insurance industry, if you want to incorporate exclusions to coverage, you have to get those approved by the insurance— Did the commissioner approve the language that you're talking about sort of for general purposes or specifically to trump the U.N. statute that we've been talking about? Judge, this policy from cover to cover was approved by the insurance commissioner— That's not answering my question. I'm sorry? That's not answering my question. I imagine that the provision you're talking about that was approved, you've said that many times, has a lot of consequences in a lot of different insurance settings. My question is, is there any reason to apply that specifically to trump and bump out the U.N. insured definition? Trump which? The U.N. insured provision. Well, Judge— In other words, we can reconcile these two points by saying, look, normally the endorsement does apply, normally the exclusion does work in a variety of insurance disputes between insurers and insureds, but the U.N. statute is a specific situation where a statute governs. Well, 8311103, Judge, does talk about those people that would be covered, would be people. I mean, they would be the insured, a relative that lives—that's basically a general definition. But if Your Honor were to cut away 8311-101, subparagraph 1, then you're creating, Judge, an irreconcilability then between two statutes that are side by side that have existed. That's why I would certify, but okay. So, I mean, the two statutes are not read separately from one another. The two statutes which form the basis of the U.N. system in Mississippi, they've got to be read in pari materia, I think. And if that is the case, and the insurance commissioner said this policy is good, and we put that in the record, we had an affidavit from the insurance commissioner that said this policy was approved in 2014. This policy was not written from Miss Hawkins until 16. And then this accident happened in 18, and then that's when the misrepresentation was determined. Very simply, when the misrepresentation was determined, Demarcus Bradley was forced placed on this policy. The premium increased, and then she was told in writing many times, you have misrepresented the fact that your son is making a claim, and you did not put him on a policy. That's not even a debatable issue. And to say that there was some inconceivable confusion about who lives in your household at the time this policy was written, Judge, how in the world can that be an issue of fact? Well, it can be an issue to conclude your argument. Okay. Yes, ma'am. Thank you very much. I guess I get all kind of excited about it. Yeah. Unfortunately. The law does that to all of us. We all do. Okay, Mr. Hazard. A wise judge once said we take language serious in the law. The statute mandates a written waiver. There's not one here. We do not rely on God when we rely on pain. Pain has said that a valid, legitimate business reason or purpose, like a higher premium, cannot restrict the act. Now, to the misrepresentation of actual policy, the policy has language that says it will provide all coverage mandated by law. I would argue back to Judge Southwick's question, there was no material misrepresentation because of policy and the provision, while Godwin's in the eerie guess, it still affected the policy and that provision. There was no misrepresentation because the policy itself incorporated the U.M. statute and the insured definition of the U.M. statute. Now, he's quoting or he's citing liability cases. There is no mandatory statutory responsibility for liability in the state of Mississippi. There's no mandate for written rejection under liability. It has no effect on U.M. coverage. Unless the court has any questions, I will conclude. Okay. Thank you very much. This concludes our oral arguments for the week. We will be in recess.